IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



**CHARLES A. BIRDSONG,**

    Plaintiff,

v.                                                                          Civil Action No. **3:14CV702**

**HENRY J. PONTON,** *et al.*,

    Defendants.

### MEMORANDUM OPINION

Charles A. Birdsong, a Virginia prisoner proceeding *pro se*, submitted this civil action pursuant to 42 U.S.C. § 1983.[1] The matter is before the Court for evaluation pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

### I.     PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" *Clay v. Yates*, 809 F. Supp. 417, 427

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ....

42 U.S.C. § 1983.

(E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF ALLEGATIONS AND CLAIMS

On October 18, 2012, Birdsong was charged with a violation of Offense Code 138—Breach or Attempt to Breach the Security Perimeter with Contraband. (Compl. ¶ 12, ECF No. 1; *see* Mem. Supp. Compl. Ex. 1, at 2, ECF No. 2-1.) On November 2, 2012, he was charged with a violation of Offense Codes 131 and 198A—Conspiracy to Commit/Possession of Communication Devices. (Compl. ¶ 12; *see* Mem. Supp. Compl. Ex. 1, at 1.) Birdsong alleges that he was also charged with a violation of Offense Codes 198A/122A on November 2, 2012. (Compl. ¶ 12.) He was found guilty of all offenses. (*See id.* ¶ 13.) As a result, he received time in segregation, lost good time credits, and was transferred to a "[s]uper [m]aximum [p]rison." (*Id.*)

Subsequently, Birdsong requested appeal packages for the institutional convictions. (*Id.*) He alleges that on December 19, 2012, Correctional Officer Yeboah served him an appeal

package for Offense Code 138, but not for Offense Codes 198A/131 and 198A/122A. (*Id.* ¶ 15.) Birdsong claims that he only signed for an appeal package for Offense Code 138. (*Id.*)

On December 25, 2012, Birdsong submitted an Informal Complaint, alleging that he never received appeal packages for Offense Codes 198A/131 and 198A/122A. (*Id.* ¶ 16.) On January 2, 2013, Officer Johnson responded, informing Birdsong that Birdsong had, in fact, received the appeal packages. (*Id.* ¶ 17.) On January 4, 2013, Birdsong submitted a regular grievance concerning the issue. (*Id.* ¶ 18.) He received a response on February 13, 2013. (*Id.* ¶ 19.) The response stated that Birdsong received appeal packages for Offense Codes 131/198A and 138 on December 19, 2012, and that Officer Yeboah signed to witness Birdsong's signatures for those packages. (*Id.*) The response also indicated that an investigation revealed that Birdsong never received an appeal package for the charge under Offense Code 122A/198A; therefore, expungement of the charge would be ordered. (*Id.*)

On February 13, 2013, Birdsong appealed to the Regional Administrator. (*Id.* ¶ 20.) He received the Regional Administrator's response, upholding the decision, on February 22, 2013. (*Id.* ¶ 21.) Birdsong alleges that attached to the response was a Disciplinary Hearing Disposition form altered to show that Birdsong had received an appeal package for Offense Codes 198A/131. (*Id.* ¶¶ 22, 24.) On March 3, 2013, Birdsong sent a notarized complaint to Warden Ponton and Director Clarke regarding the allegedly altered form. (*Id.* ¶ 23.) On March 26, 2013, Birdsong was informed that his grievance did not meet the criteria for a Level III response. (*Id.* ¶ 25.)

The Court construes Birdsong's Complaint to assert the following claims:

Claim One: Defendants[2] violated Birdsong's Fourteenth Amendment[3] right to due process when they failed to provide him with an appeal

---

[2] The named Defendants are: Henry Ponton, Warden of Nottoway Correctional Center ("NCC"); D. Johnson, a Correctional Officer and Hearing Officer at NCC; A. James, Grievance Coordinator at NCC; S. Yeboah, a Correctional Officer at NCC; G. Robinson, A. Bryant, and

4

|  |  |
|---|---|
|  | package for his institutional convictions which resulted in (a) placement in segregation, (b) loss of good time credits, and (c) a transfer to a higher security prison. |
| Claim Two: | Defendants violated Birdsong's Eighth Amendment[4] rights by (a) forging the Disciplinary Hearing Disposition form, and (b) transferring him to a higher security institution. |

Birdsong seeks declaratory and injunctive relief as well as damages. (*Id.* ¶ 31.) For the reasons set forth below, Claims 1(a), 1(b), 2(a), and 2(b) will be DISMISSED. The Court will ORDER service of Claim 1(c) on Defendants.

### III.  DUE PROCESS CLAUSE

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected liberty or property interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted).

To establish a state-created liberty interest, Birdsong "must make a threshold showing that the deprivation imposed amounts to an 'atypical and significant hardship' or that it 'inevitably affect[s] the duration of his sentence.'" *Puranda v. Johnson*, No. 3:08CV687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (alteration in original) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)). If Birdsong makes this threshold showing, he must then identify

---

Gray Bass, Regional Administrators for the Virginia Department of Corrections ("VDOC"); and Harold W. Clarke, Director of the VDOC.

[3] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

5

the state regulatory or statutory language that creates a protected liberty interest in remaining free from such confinement. *See id.*

### A. Placement in Segregation

In Claim 1(a), Birdsong alleges that his right to due process was violated when Defendants failed to provide him with an appeal package for one of his institutional convictions, which resulted in Birdsong's placement in segregation. (Compl. ¶ 13.) Birdsong fails to allege facts that plausibly suggest that his placement in segregation amounted to an "'atypical and significant hardship.'" *Puranda*, 2009 WL 3175629, at *4 (quoting *Sandin*, 515 U.S. at 484, 487); *see Knight v. Johnson*, No. 3:10CV648, 2011 WL 4101664, at *4–5 (E.D. Va. Sept. 14, 2011) (citation omitted) (explaining that "[p]lacement in a higher security classification or a higher security institution does not impose an atypical and significant hardship"). Moreover, Birdsong "[does] not enjoy a procedural due process right to an appeal." *Coor v. Stansberry*, No. 3:08CV61, 2008 WL 8289490, at *2 (E.D. Va. Dec. 31, 2008) (citing *Wolff*, 418 U.S. at 563–71; *Johnson v. Goord*, 487 F. Supp. 2d 377, 386 (S.D.N.Y. 2007)); *Puranda*, 2012 WL 2311844, at *4 (concluding same). Accordingly, Claim 1(a) will be DISMISSED.

### B. Loss of Good Time Credits

In Claim 1(b), Birdsong asserts that his inability to appeal his institutional convictions resulted in the loss of good time credits. (Compl. ¶ 13.) To the extent Birdsong alleges that prison officials revoked vested good time credits, his claim does implicate a protected liberty interest. *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 653 n.9 (4th Cir. 2007) (citing *Wolff v. McDonnell*, 418 U.S. 539, 560–61 (1974)). Nevertheless, the Constitution only guarantees the following minimal process prior to revoking such credits:

> (1) an impartial tribunal; (2) written notice of the charges prior to the hearing; (3) an opportunity to call witnesses and present documentary evidence; (4) aid from a

fellow inmate or staff representative if the issues are complex; and, (5) a written statement by the fact finder describing the evidence relied upon and the reasons for taking disciplinary action.

*Coor*, 2008 WL 8289490, at *2 (citing *Wolff*, 418 U.S. at 563–71). Birdsong does not allege that he was deprived of any of these procedural protections.[5] Instead, he claims that he was denied his right to appeal. Again, Birdsong "[does] not enjoy a procedural due process right to an appeal." *Id.* (citing *Wolff*, 418 U.S. at 563–71; *Johnson v. Goord*, 487 F. Supp. 2d 377, 386 (S.D.N.Y. 2007)); *Puranda*, 2012 WL 2311844, at *4 (concluding same). Accordingly, Claim 1(b) will be DISMISSED.

### C. Transfer to Higher Security Prison

In Claim 1(c), Birdsong alleges that his due process rights were violated when Defendants failed to provide him with an appeal package for one of his institutional convictions, which resulted in a transfer to a higher security prison. (Compl. ¶ 13.) Birdsong alleges that he was transferred to a "Super Maximum Prison." (*Id.*) He contends that this transfer placed him "in a hostile environment around violent offenders[,] [w]hich ultimately result[ed] in stress, depression, deprived of ability to see family, loss of mental focus . . . ." (*Id.* ¶ 32.)

First, the Court believes that Birdsong only intends to bring a due process challenge on the ground that Defendants inhibited his ability to appeal his institutional conviction. As previously explained, Birdsong simply "[does] not enjoy a procedural due process right to an

---

[5] Birdsong does assert that he did not receive written notice pursuant to the Virginia Department of Corrections Operating Procedures "before being deprived of rights, privileges, disciplinary hearing, appeals, transfers, etc." (Mem. Supp. Compl. at 10.) However, this does not equal an assertion that he was not provided written notice of the charges prior to his institutional hearing. Birdsong's own submissions indicate Birdsong received notice of the charges prior to the hearing. (*See* Mem. Supp. Compl. Ex. 1, at 1–2.) Moreover, violations of prison operating procedures do not implicate due process rights and are not cognizable under § 1983. *See Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990); *Puranda v. Hill*, No. 3:10CV733-HEH, 2012 WL 2311844, at *5 (E.D. Va. June 18, 2012).

appeal." *Coor*, 2008 WL 8289490, at *2 (citing *Wolff*, 418 U.S. at 563–71; *Johnson*, 487 F. Supp. 2d at 386); *Puranda*, 2012 WL 2311844, at *4 (concluding same). However, to the extent he alleges he was deprived of some procedural protection prior to his transfer to the alleged "supermax" prison, the Court acknowledges that Birdsong may have a liberty interest, protected by the Fourteenth Amendment's Due Process Clause, in avoiding assignment to a "supermax" prison. *See Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005) (finding that inmates in Ohio had a liberty interest in avoiding transfer to Ohio State Penitentiary, a "supermax" facility). Thus, the Court finds that Birdsong alleges sufficient facts to make out a claim that Defendants violated his due process rights by transferring him to a "super maximum prison," without appropriate procedural safeguards.

## IV. EIGHTH AMENDMENT

To make out an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts that suggest that the deprivation complained of was extreme and amounted to more than the "'routine discomfort'" that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381).

The subjective prong of a deliberate indifference claim requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2003) (quoting *Rich*, 129 F.3d at 340 n.2).

### A. Disciplinary Hearing Disposition Form

In Claim 2(a), Birdsong asserts that, by altering the Disciplinary Hearing Disposition form to state that Birdsong had received his appeal packages, Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. (Compl. ¶ 32.) Birdsong alleges that Defendants subjected him to cruel and unusual punishment because he was "placed

in segregation/isolation; denied visits; phone privilege; exercise; law library [access]; schooling; loss of good time credit; increase in security level; and ultimately transfer[red] to supermax prison." (Mem. Supp. Compl. at 13–14.) However, Birdsong's complaints about the conditions of his confinement amount to no more than "'routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society.'" *Strickler*, 989 F.2d at 1380 n.3 (quoting *Hudson*, 503 U.S. at 9). As to the objective component, Birdsong fails to allege that he sustained any injury, much less a "serious or significant emotional injury as a result of these conditions." *Id.* at 1381. For this reason alone, his claim should be dismissed. *See DeBlasio v. Johnson*, 128 F. Supp. 2d 315, 325–26 (E.D. Va. 2000) (finding that a loss of recreation, telephone, canteen, and visitation privileges upon placement in segregation does not violate the Eighth Amendment). Moreover, Birdsong fails to allege facts that suggest that Defendants knew of and disregarded a substantial risk of serious harm to Birdsong from the conditions of which he complains. Accordingly, Claim 2(a) will therefore be DISMISSED.

### B. Transfer to Higher Security Prison

In Claim 2(b), Birdsong contends that Defendants violated his Eighth Amendment rights by transferring him to a higher security institution. In sum, Birdsong alleges that Defendants transferred him to a "Super Maximum Prison in a hostile environment around violent offenders[,] [w]hich ultimately result[ed] in stress, depression, deprived of ability to see family, loss of mental focus . . . ." (Compl. ¶ 32.) Birdsong's vague allegation fails to state an Eighth Amendment claim.

Birdsong alleges neither a serious or significant emotional injury nor deliberate indifference by Defendants. While the conditions at Red Onion State Prison "may be inconvenient and uncomfortable, [Birdsong] has not alleged anything to suggest that his living

conditions violate contemporary standards of decency." *Canada v. Ray*, No. 7:08cv00219, 2010 WL 2179062, at *3 (W.D. Va. May 28, 2010) (rejecting plaintiff's claim that being housed at Red Onion State Prison for nine years violated his Eighth Amendment rights). Accordingly, Claim 2(b) will be DISMISSED.

## V. CONCLUSION

Claims 1(a), 1(b), 2(a), and 2(b) will be DISMISSED. The Court will continue to process the action with respect to Claim 1(c).

An appropriate Order will accompany this Memorandum Opinion.

Date: 11-13-15
Richmond, Virginia

/s/
James R. Spencer
Senior U. S. District Judge