IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



FILED
SEP - 9 2016
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**CHARLES A. BIRDSONG,**

    Plaintiff,

v.                                             Civil Action No. **3:14CV702**

**HENRY J. PONTON,** *et al.*,

    Defendants.

## MEMORANDUM OPINION

Charles A. Birdsong, a Virginia inmate, brings this 42 U.S.C. § 1983[1] action alleging that Defendants[2] violated his due process rights under the Fourteenth Amendment.[3] By Memorandum Opinion and Order entered on November 13, 2015, the Court dismissed all of Birdsong's claims except Claim One (c). *Birdsong v. Ponton*, No. 3:14CV702, 2015 WL

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] Plaintiff names the following Defendants: Henry J. Ponton, former Warden of Nottoway Correctional Center ("NCC"); D. Johnson, a Correctional Officer and Hearing Officer at NCC; A. James, the Grievance Coordinator at NCC; S. Yeboah, a Correctional Officer at NCC; G. Robinson, Regional Administrator for the Virginia Department of Corrections ("VDOC"); A. Bryant, Regional Administrator for the VDOC; Gray Bass, Regional Administrator for the VDOC; and Harold W. Clarke, Director of the VDOC.

[3] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

7176112, at *6 (E.D. Va. Nov. 13, 2015). The action proceeds on Claim One (c) of Birdsong's Complaint. (ECF No. 1.) Specifically, Birdsong asserts:

> Claim One (c): Defendants violated Birdsong's Fourteenth Amendment right to due process when he was transferred to a higher security prison.

Birdsong seeks declaratory, injunctive, and monetary relief. The matter is now before the Court on Defendants' Motion for Summary Judgment (ECF No. 40) and Supplemental Motion for Summary Judgment (ECF No. 50). For the reasons stated below, Defendants' Motion for Summary Judgment and Supplemental Motion for Summary Judgment will be GRANTED.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "'*scintilla* of evidence'" will

2

not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)).

In support of their Motion for Summary Judgment and Supplemental Motion for Summary Judgment, Defendants have submitted: (1) Defendant Ponton's affidavit (Mem. Supp. Mot. Summ. J. Ex. 1 ("Ponton Aff."), ECF No. 41-1); (2) an affidavit from David Robinson, Chief of Corrections Operations for the VDOC (*id.* Ex. 2 ("Robinson Aff."), ECF No. 41-2); and, (3) an affidavit from D. Tate, a major at Red Onion State Prison ("ROSP") (Mem. Supp. Supp'l Mot. Summ. J. Ex. 1 ("Tate Aff."), ECF No. 51-1).

At this stage, the Court is tasked with assessing whether Birdsong "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). Because Birdsong failed to swear to the contents of his Complaint under penalty of perjury, the Complaint fails to constitute admissible evidence. *See United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004). Moreover, although Birdsong responded to both the Motion for Summary Judgment and the Supplemental Motion for Summary Judgment (ECF Nos. 44, 43), Birdsong failed to submit any evidence with his responses.

Birdsong's failure to present any admissible evidence to counter Defendants' Motion for Summary Judgment and Supplemental Motion for Summary Judgment permits the Court rely solely on Defendants' affidavits in deciding the Motion and Supplemental Motion. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) ("'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992))). Accordingly, the following facts are established for the Motion for Summary Judgment and

3

Supplemental Motion for Summary Judgment. The Court draws all permissible inferences in favor of Birdsong.

## II. UNDISPUTED FACTS

Birdsong was initially assigned to Security Level 5 when he entered into the custody of the VDOC in 2001. (Ponton Aff. ¶ 5.) In 2003, after a review, Birdsong was assigned to Security Level 3. (*Id.*) Three years later, after an institutional conviction for aggravated assault, "Birdsong was assigned to segregation status and Security Level 5." (*Id.*) On October 20, 2010, while incarcerated at Wallens Ridge State Prison, Birdsong was assigned to Security Level 4. (*Id.*) "He was transferred to Sussex I State Prison on July 24, 2012, and to [Nottoway Correctional Center ("NCC")] on August 31, 2012." (*Id.*)

On November 2, 2012, Birdsong received institutional charges while incarcerated at NCC which resulted in an increase in his security level. (*Id.*) On January 10, 2013, Birdsong received an Institutional Classification Authority ("ICA") Hearing Notification Form. (*Id.* ¶ 7.) This form notified Birdsong "that he would be reviewed by the ICA on or after January 10, 2013, for transfer to a higher security facility and reduction in good time earnings." (*Id.*)

Under VDOC Operating Procedure 830.1, an offender must "receive notice within 48 hours of a formal ICA hearing. The offender is permitted to be present at the hearing, to remain silent and to have a counselor or other employee present to advise him." (*Id.* ¶ 6.) Birdsong waived his right to 48-hours notice. (*Id.* ¶ 7.) His ICA hearing was held on January 11, 2013. (*Id.*) Birdsong was present for the hearing. (*Id.*) During the hearing, "Birdsong disputed the scoring used to determine his assignment(s). The ICA recommended Birdsong's assignment to Security Level 5 and transfer to Red Onion State Prison or Wallens Ridge State Prison, noting that he had established a poor pattern of institutional behavior within a short time." (*Id.*) On

January 17, 2013, the VDOC's Classification Section reviewed and approved the ICA's recommendation. (*Id.*)

Birdsong was transferred to ROSP on January 28, 2013. (*Id.*) Birdsong "was received at ROSP from Nottoway Correctional Center under segregation status on January 28, 2013." (Tate Aff. ¶ 4.) ROSP "is a maximum security correctional facility that houses offenders who are classified as high security risks and who are some of the most violent offenders incarcerated in the VDOC." (Robinson Aff. ¶ 3.) Many offenders housed at ROSP "require segregation housing because they are disruptive, assaultive, have severe behavioral problems, demonstrate predatory-type behaviors and are escape risks." (*Id.*) ROSP "is not classified as a 'supermax' prison." (*Id.*)

On February 1, 2013, the ICA reviewed Birdsong for "appropriate housing assignment." (Tate Aff. ¶ 4.) The ICA "recommended Birdsong's assignment to the general population and he remained in a general population assignment at ROSP until his transfer to River North Correctional Center on December 3, 2014." (*Id.*)

### III. DUE PROCESS

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). A liberty interest may arise from the Constitution itself, or from state laws and policies. *See Wilkinson v. Austin*, 545 U.S. 209, 220–21 (2005).

### A. The Constitution Fails to Confer a Liberty Interest in Avoiding Transfer to ROSP

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Thus, Birdsong cannot demonstrate that the Constitution grants him a liberty interest in avoiding a transfer to ROSP.

### B. Analysis of State-Created Liberty Interests

Demonstrating the existence of a state-created liberty interest requires a "two-part analysis." *Prieto v. Clarke*, 780 F.3d 245, 249 & n.3 (4th Cir. 2015) (quoting *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000)). First, a plaintiff must make a threshold showing that the deprivation imposed amounts to an "atypical and significant hardship" or that it "inevitably affect[s] the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see Puranda v. Johnson*, No. 3:08CV687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (citing cases). If the nature of the restraint the plaintiff challenges meets either prong of this threshold, the plaintiff must next show that Virginia's statutory or regulatory language "grants its inmates . . . a protected liberty interest in remaining free from that restraint." *Puranda*, 2009 WL 3175629, at *4 (alteration in original) (quoting *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000)).

With respect to the *Sandin* threshold analysis, the Court must first "determine what the normative 'baseline' is: what constitutes the 'ordinary incidents of prison life' for *this particular inmate*?" *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015) (citing *Prieto*, 280 F.3d at 253). Second, "with the baseline established, [the Court] determine[s] whether the prison conditions

6

impose atypical and substantial hardship in relation to that norm." *Id.* (citing *Prieto*, 780 F.3d at 254). The United States Court of Appeals for the Fourth Circuit has observed that, "[a]lthough the general prison population is not the relevant atypicality baseline in all cases, it is the touchstone in cases where the inmate asserting a liberty interest was [initially] sentenced to confinement in the general population and later transferred to security detention." *Id.* at 528–29 (citing *Prieto*, 780 F.3d at 252).

The Court must therefore consider whether the conditions of Birdsong's confinement at ROSP imposed an atypical and substantial hardship in relation to the ordinary incidents of prison life. The Supreme Court's decision in *Wilkinson* provides guidance for this analysis. In *Wilkinson*, the Court considered whether Ohio inmates had a protected liberty interest in avoiding assignment to the Ohio State Penitentiary ("OSP"), a "Supermax" facility, and, if so, what process was due under the Fourteenth Amendment before assigning inmates to OSP. 545 U.S. at 213. With respect to the conditions at OSP, the Court noted:

> Conditions at OSP are more restrictive than any other form of incarceration in Ohio, including conditions on its death row or in its administrative control units. The latter are themselves a highly restrictive form of solitary confinement. In OSP almost every aspect of an inmate's life in controlled and monitored. Inmates must remain in their cells, which measure 7 by 14 feet, for 23 hours per day. A light remains on in the cell at all times, though it is sometimes dimmed, and an inmate who attempts to shield the light to sleep is subject to further discipline. During the one hour per day that an inmate may leave his cell, access is limited to one of two indoor recreation cells.
> Incarceration at OSP is synonymous with extreme isolation. In contrast to any other Ohio prison, including any segregation unit, OSP cells have solid metal doors with metal strips along their sides and bottoms which prevent conversation or communication with other inmates. All meals are taken alone in the inmate's cell instead of in a common eating area. Opportunities for visitation are rare and in all events are conducted through glass walls. It is fair to say OSP inmates are deprived of almost any environmental or sensory stimuli and of almost all human contact.
> Aside from the severity of the conditions, placement at OSP is for an indefinite period of time, limited only by an inmate's sentence. For an inmate serving a life sentence, there is no indication how long he may be incarcerated at

OSP once assigned there. Inmates otherwise eligible for parole lose their eligibility while incarcerated at OSP.

*Id.* at 214–15 (internal citations omitted). Moreover, after an initial thirty-day review, an inmate's placement at OSP was "reviewed just annually." *Id.* at 224. The Supreme Court concluded that "[w]hile any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." *Id.* Therefore, inmates in Ohio "ha[d] a liberty interest in avoiding assignment to OSP." *Id.* (citing *Sandin*, 515 U.S. at 483).

Birdsong has supplied no evidence with respect to what prison life was like in either segregation or the general prison population at NCC, and how that was different than the conditions at ROSP. Birdsong fails to put forth any evidence regarding the conditions at ROSP, much less evidence indicating that those conditions were as harsh as the conditions described in *Wilkinson* such that a State might conceivably intend to create a liberty interest in avoiding the conditions. Furthermore, Birdsong fails to direct the Court to any state statutes or regulations that create a liberty interest in avoiding a transfer to ROSP. *Puranda*, 2009 WL 3175629, at *4. Because Birdsong fails to demonstrate that he enjoyed a protected liberty interest in avoiding a transfer to ROSP, Claim One (c) will be DISMISSED.

### IV. REQUEST FOR INJUNCTIVE RELIEF

Birdsong seeks injunctive relief in the form of "ordering defendants to expunge ... offense code 131/198A, order an immediate transfer back to Nottoway Correctional Center or to a low security level institution and good time credits back." (Compl. ¶ 34 (spelling and capitalization corrected).) However, relief in the form of expungement of a disciplinary conviction and restoration of good time credits is unavailable in a § 1983 action. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding that habeas corpus is the exclusive remedy for a

prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release). Accordingly, Birdsong's request to have a disciplinary conviction expunged and good time credits restored will be DISMISSED WITHOUT PREJUDICE to Birdsong's right to file a habeas corpus action raising this claim.

Moreover, "as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986)). Birdsong is now incarcerated at River North Correctional Center. Accordingly, Birdsong's claim for injunctive relief in the form of a transfer will be DISMISSED AS MOOT.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 40) and Supplemental Motion for Summary Judgment (ECF No. 50) will be GRANTED. Claim One (c) will be DISMISSED. Birdsong's claim for injunctive relief in the form of having a disciplinary conviction expunged and good time credits restored will be DISMISSED WITHOUT PREJUDICE to Birdsong's right to file a habeas corpus action raising that claim. Birdsong's claim for injunctive relief in the form of a transfer will be DISMISSED AS MOOT. Because all of Birdsong's claims have been resolved, the action will also be DISMISSED.

An appropriate Order shall accompany this Memorandum Opinion.

Date: 9-9-16
Richmond, Virginia

/s/
James R. Spencer
Senior U. S. District Judge